IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CARL E. JOHNSON                                                                                      PLAINTIFF

v.                                           CIVIL No. 4:10-cv-4138

SGT. JEREMY BROWN *et al.*                                                                      DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Carl E. Johnson, a resident of Hope, Arkansas, filed this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Paul K. Holmes, United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation.

**I.     Background**

As this case is before the Court on Defendants' Motion for Summary Judgment, the Court views the facts in a light most favorable to the Plaintiff. Upon inquiry from the Court as to whether Plaintiff would prefer the assistance of Court in responding to the Motion for Summary Judgment, or if he would respond on his own, Plaintiff chose to respond through a questionnaire propounded by the Court. ECF Nos. 18, 19.

Plaintiff has brought this action against the Defendants, alleging Defendants denied him due process and held him under unconstitutional conditions of confinement while he was an inmate in the Hempstead County Detention Facility. ECF No. 1. Plaintiff is suing the Defendants in both their individual and official capacities. ECF No. 22, ¶11.

Specifically, Plaintiff alleges he was placed on "punitive status" by being placed in his cell for twenty-three hours a day, without being found guilty of any rule violation. ECF No. 1; ECF No. 22, ¶1. Plaintiff states Defendant Godbolt used his "power and authority" to keep Plaintiff "locked

down" for twenty-three hours a day, without Plaintiff committing any violations. ECF No. 22. All inmates are given one hour per day outside their cell. *Id.* at ¶3. The cell is approximately eight feet by ten feet, or 80 square feet. *Id.* Plaintiff states there was no room for exercises such as sit-ups or push-ups to be performed. *Id.*

Plaintiff alleges he was not able to access the phone from 6:00 a.m. to 10:00 p.m., as was stated in the handbook to be the time of telephone availability for inmates, because he was locked down for twenty-three hours a day. *Id.* at ¶4. Plaintiff did have access to the phone every day during his time out of his cell. ECF No. 22. However, even when Plaintiff did not have telephone access, he did have access to the mail and to visitation. *Id.* at ¶4. Plaintiff was harmed by his lack of access to the phone because it affected his emotions, and he could not check on his family, children, or friends. *Id.*

Regarding his conditions of confinement claims, Plaintiff states he was forced to eat in his cell, against the policies of the facility. ECF No. 22, ¶5. Plaintiff alleges he ate three meals a day, in his cell, for over three months. *Id.* Because of taking his meals in his cell, Plaintiff was "mentally disturbed" and "literally felt sick to [his] stomach." *Id.* Moreover, Plaintiff was forced to drink out of the same cup everyday and the cup was not washed. *Id.* at ¶6. Plaintiff could not wash the cup in his cell because there was no hot water available and the sink in his cell was not sanitized. *Id.* Plaintiff was harmed because the cup was "filthy, nasty, and unsanitized." ECF No. 22, ¶6. Although Defendants contend Plaintiff could place his cup with his laundry for it to be cleaned, Plaintiff states he was not told he could do so until after "charges were filed against Hempstead County Detention Facility." *Id.* at ¶8.

Cleaning supplies in the form of soap mixed with water and an unidentified spray for the sink

2

and toilet were offered to him once or twice a week. *Id.* Plaintiff states he requested cleaning products everyday and was denied those requests by non-parties Julian Beasly, Jimmy Smith, and "Summerville." *Id.*

On one occasion, November 7, 2010, the toilet in an adjoining cell overflowed with urine and feces and Plaintiff had to smell the foul odors from this incident from 6:30 p.m. until 9:00 a.m. the next day. *Id.* at ¶9. Plaintiff was harmed because he had to eat breakfast with the foul odor and it made him sick to his stomach, and it "felt as if I was going to throw up." ECF No. 22, ¶9.

## II. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. Discussion

### A. Official Capacity Claims

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21 (1991). Claims against

> individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* at 24-27. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* at 25-27.

*Gorman*, 152 F.3d at 914.

A review of the complaint in this case shows that Plaintiff specifically stated he was suing the Defendants in both their individual and official capacities. ECF No. 22, ¶11. Plaintiff's official capacity claims are tantamount to suing Hempstead County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690-91.

Plaintiff in this case has made no allegation that there were unconstitutional policies or practices in Hempstead County, nor has he provided any evidence of the same. In fact, when asked to specify the custom, policy or practice of Hempstead County which denied him his constitutional rights, Plaintiff stated "they used their power and authority to belittle me. They made me feel unhuman." Plaintiff has clearly failed to allege any policy, custom, or practice in Hempstead County. As such, to the extent Plaintiff is alleging official-capacity claims, Defendants' Motion for Summary Judgment, ECF No. 15, should be **GRANTED** on those claims.

4

**B.     Individual Capacity Claims**

Plaintiff has made two individual capacity claims, that he was denied due process by being placed in his cell for twenty-three hours a day, and that he was housed under unconstitutional conditions of confinement.

### i. Due Process Violation

Plaintiff's allegation he was placed on "punitive status," because he was locked down twenty-three hours a day without any hearing, is essentially a claim that Plaintiff was denied due process. In *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002), the Seventh Circuit stated:

> A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less. But no process is required if he is placed in segregation not as punishment but for managerial reasons. Suppose for example that the only vacant cell left in the jail was in the segregation ward when a new prisoner arrived; placing him in that cell would be a managerial decision. Or suppose, ... that a prisoner was placed under particularly restrictive conditions of confinement at the jail because he was considered a suicide risk. Again, no hearing would be required. Ditto if he was placed in segregation to protect himself from other prisoners, or to protect jail staff from his violent propensities. As long as the purpose was indeed preventive rather than a punitive one, he would not be entitled to notice and a hearing . . . . In none of these cases would a hearing be practicable, or even useful, because managerial decisions do not have the character of rulings applying legal standards to facts, the kind of rulings for which adjudicative hearings are designed.

*Id.* 286 F.3d at 438; *see Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) ("Requiring a pretrial detainee to work or be placed in administrative segregation is punishment . . .. Regardless of whether the detentions are classified as 'administrative,' if a pre-trial detainee must remain in a lock-up area if he does not work, the detention amounts to punishment.").

Plaintiff has offered no evidence that his twenty-three hour a day lock-down was for punitive, rather than administrative, reasons. Plaintiff relies on the inmate handbook to establish that such lock-

5

down conditions are generally for rule infractions, the allegation in his Complaint is that his status was in violation of the inmate handbook, ECF No. 1, but it is well settled that an alleged violation of jail policy is not actionable under §1983. *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (no § 1983 liability for violation of prison policy). Moreover, Plaintiff admits all inmates were housed under similar conditions, and provides no evidence he was the only inmate subject to the conditions he described. ECF No. 22, ¶3. In response to grievances written by Plaintiff regarding this issue, he was repeatedly told by Defendants that the lock-down status was administrative and for security reasons. ECF No. 1-1.

To the extent Plaintiff alleges the twenty-three hour lock-down violated his constitutional rights, the Court finds no genuine issue of material fact. Only sanctions that impose atypical and significant hardships upon a prisoner in relation to the ordinary restraints and incidents of prison life implicate the due process clause. *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). In *Campbell v. Cauthron*, 623 F.2d 503, 506-07 (8th Cir. 1980), the Eighth Circuit Court of Appeals established that inmates confined to their cells for more than sixteen hours a day, as Plaintiff alleges he is, must be given the opportunity to exercise one hour, at least, daily. Plaintiff agrees he was given this opportunity. ECF No. 22, ¶¶ 1, 4.

*Campbell* also established that for inmates such as Plaintiff, who are held for over a week, the minimum square feet provided for an inmate should be 43.3 square feet. In their Motion for Summary Judgment, Defendants provide an affidavit from Defendant Godbolt establishing that the inmates at Hempstead County are provided with space to meet this standard. ECF No. 16-1. Plaintiff agrees with Defendant Godbolt's statement, ECF No. 22,¶ 3, and even goes further to estimate the cells are about 8 feet by 10 feet, or 80 square feet. *Id.* Plaintiff has not shown a

constitutional violation in this regard. *Campbell*, 623 F.2d at 507. Therefore, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment, ECF No. 15, be granted on Plaintiff's claims regarding being placed in his cell twenty-three hours a day.

### ii. Unconstitutional Conditions of Confinement

Plaintiff has alleged that he was subjected to unconstitutional conditions of confinement because he was forced to eat his meals in his cell; he was exposed to foul odors from 6:30 p.m. until 9:00 a.m. on November 7-8, 2010; his cup was not washed; and he was denied access to the telephone except for one hour a day.

To state a viable conditions of confinement claim, an inmate must prove that: (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004); *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998). This standard applies whether the inmate is a pretrial detainee or a convicted prisoner. *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006); *Smith v. Copeland*, 87 F.3d 265, 267–68 (8th Cir. 1996).

Regarding Plaintiff's claim he had to eat his meals in his cell, the Court notes that Plaintiff stated he had access to soap mixed with water and an unidentified "spray" intended for the sink and toilet once or twice a week. ECF No. 22, ¶8. Therefore Plaintiff had the opportunity to clean once or twice within a seven-day period. In evaluating whether an inmate's exposure to unsanitary conditions is unconstitutional, the Court is to focus on the length of the exposure to unsanitary conditions and how unsanitary the conditions were. *See Owens v. Scott County Jail*, 328 F.3d 1026,

1027 (8th Cir.2003) (*citing Hutto v. Finney*, 437 U.S. 678, 686-87 (1978)); *see also Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994) (length of time required for conditions to be unconstitutional decreases as level of filthiness increases). Such allegations do not rise to a constitutional dimension.

At most, Plaintiff has alleged he was subjected to an unclean area for less than a seven-day period of time. Moreover, Plaintiff has not detailed the conditions of his cell other than to state it was an "unsanitized area." ECF No. 22. "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991).

Plaintiff has also alleged he was exposed to foul odors when another inmate's toilet overflowed, and he was forced to suffer through those odors during his morning meal, on one occasion. Other courts have found that even pervasive and persistent body waste odors which permeate day areas and entryways do not amount to constitutional violations. *See Kitt v. Ferguson*, 750 F. Supp. 1014 (D. Neb. 1990) (stating that while the conditions were not unconstitutional, the conditions in that case, taken as a whole, were potentially close to creating intolerable conditions). Additionally, even if Plaintiff missed one meal due to the odor, such a showing does not rise to the constitutional dimension. *See Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986) (even on a regular permanent basis, two meals a day may be adequate); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (claim that inmate missed eight meals properly dismissed as frivolous); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (Eighth Amendment not violated when inmate served only one meal a day for fifteen consecutive days where the one meal was sufficient to maintain normal health).

Plaintiff's claim his cup was not properly cleaned should also be dismissed at this time. Plaintiff agreed he was provided with soap and other cleaner for his cell, including the sink area, once a week. Clearly, Plaintiff was able to wash his cup at this time. While Defendants contend Plaintiff could place his cup with his laundry to have it washed, the Court will accept at this stage Plaintiff's contention that he was not aware of that option. Even so, Plaintiff had other opportunities to clean his cup. Moreover, Plaintiff has not alleged how any of the named Defendants were personally involved with denying him a clean cup. *See Beck v. Lafleur*, 257 F.3d 764 (8th Cir. 2001) (prisoners complaint dismissed under section 1983 for failure to allege sufficient personal involvement by any defendant).

Plaintiff has also alleged he was denied access to the telephone, except for one hour per day, despite the inmate handbook provision that stated the telephone would be accessible from 6:00 a.m. until 10:00 p.m. As stated above, an internal jail policy or procedure does not create a constitutional right, nor does the failure to follow such a regulation rise to the level of a § 1983 claim. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir.1996).

Construing Plaintiff's pleadings as broadly as possible, and drawing all inferences in favor of the Plaintiff, the Court finds, as a matter of law, that there is no genuine issue of material fact regarding Plaintiff's unconstitutional conditions of confinement claims. Accordingly, the Court recommends Defendants' Motion for Summary Judgment, ECF No. 15, be granted and this claim be dismissed with prejudice.

## IV.    Conclusion

Accordingly, it is the Report and Recommendation of the undersigned that the Motion for Summary Judgment, ECF No. 15, be **GRANTED** in its entirety.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636 (b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger** *de novo* **review by the district court.**

**DATED** this **26th day of August 2011.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE